## LLOYD v. SILVERS et al.  (No. 214.)

(Court of Civil Appeals of Texas. Waco. May 28, 1925. Rehearing Denied June 18, 1925.)

**1. Brokers ⬅37—Evidence held to sustain finding that cancellation of order to sell cotton made too late to stop execution of order.**

Evidence *held* to sustain finding that owner's cancellation of his earlier order to his brokers to sell cotton was not made in time to enable brokers to stop execution of order.

**2. Appeal and error ⬅1050(1)—Evidence ⬅515—One familiar with rules of cotton exchange properly permitted to testify who bears loss from breach of contract, but admission thereof, if error, was harmless.**

One familiar with rules governing buying and selling of cotton exchanges *held* properly permitted to testify as an expert as to which party under such rules was required to bear loss from breach of contract, and admission of such evidence, even if error, was harmless.

**3. Evidence ⬅515—Testimony of expert that New Orleans cotton market followed New York market not objectionable as basing conclusion on conclusion.**

One qualified as an expert was properly permitted to testify that New Orleans cotton market follows New York market as general rule, and such evidence was not objectionable as basing conclusion on a conclusion.

**4. Evidence ⬅18—Common knowledge that New Orleans cotton market generally follows New York market.**

It is matter of common knowledge that New Orleans cotton market follows New York market as general rule.

**5. Appeal and error ⬅1050(2)—Admission of evidence, if error, held harmless.**

Admission of statement of expert that New Orleans cotton market follows New York market as general rule, if erroneous, *held* harmless, where only issue involved was whether or not cotton owner's cancellation of order to sell was timely.

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Suit by Adolph Polster against C. W. Lloyd, Robert O. Silvers & Co., and Robert O. Silvers, individually. From a judgment in favor of plaintiff against Silvers & Co., and Robert O. Silvers individually, and in favor of Robert O. Silvers & Co. against C. W. Lloyd, the latter appeals. Affirmed.

E. G. Lloyd, Jr., of Groesbeck, and Frank Oltorf and N. J. Llewellyn, both of Marlin, for appellant.

Bartlett & Carter, of Marlin, for appellees.

### Statement.

STANFORD, J. Appellee Adolph Polster filed this suit against appellant C. W. Lloyd, and appellees Robert O. Silvers & Co. and Robert O. Silvers, individually, for alleged breach of contract, to recover $500 alleging that Robert O. Silvers & Co., on November 3, 1923, was conducting a cotton brokerage business in Marlin, through which cotton for future delivery was bought and sold; that he and appellant, Lloyd, on said date, as partners in said one transaction, entered into a contract with appellee Silvers & Co. to purchase 100 bales of cotton, and as a guaranty to secure any loss appellee Polster deposited $500 with appellee Silvers & Co.; that he and Lloyd did buy said cotton, sold same at a profit, and divided said profits, but that his $500 was not returned by appellee Silvers & Co.; that at a later date, about November 8, 1923, appellant, Lloyd, individually purchased through said Silvers & Co. another 100 bales, and that there was a loss on said last purchase; that he, Polster, was in no way connected with or interested in said last purchase, but that appellee Silvers & Co. is claiming the right to hold his $500 to cover the loss on said last purchase.

Appellee Silvers & Co. answered, alleging that they had a certain sum on their books to the credit of appellee Polster, and offered to pay same, and that they be discharged with their costs, etc. Appellant, Lloyd, answered to the effect that appellee Polster was not interested in the purchase of November 8th; that same was his individual transaction; and that he was not due Silvers & Co. anything for any loss on said transaction, in that he canceled the order for the 100 bales purchased on November 8th before said order was executed, etc.

The court submitted the case to the jury on special issues, and on the answers thereto entered judgment in favor of appellee Polster against appellee Silvers & Co. and Robert O. Silvers, individually, for $513.75, and judgment in favor of Robert O. Silvers & Co. against C. W. Lloyd for $203.08. C. W. Lloyd alone has appealed.

### Opinion.

[1] Under his first assignment appellant contends that the finding of the jury to the sixth special issue to the effect that, when appellant instructed appellee Silvers & Co. to cancel the order of November 8th, he did not do so in time for said appellee to have stopped the execution of the order by the means at hand before it was executed by sale of the cotton on the New Orleans exchange is not supported by the evidence.

The record discloses that on receipt of an order by Robert O. Silvers & Co. of Marlin it was their custom to immediately wire it to their Waco office, and the Waco office, having direct connection with the New Orleans exchange, would immediately wire it on to their broker at said point, and its execution wired back. Mr. Lester Levy, who was in charge of the Marlin office, testified, in effect, that appellant put in an order at about 12:15 to sell 100 bales of cotton, and that he wired the order in, and a few minutes later appellant ordered it canceled, but that before the telegram canceling reached New Orleans it had been executed, and such execution of the contract wired back to the Marlin office. Mr. Levy testified further that Mr. Lloyd said he wanted to cancel, and that he, Levy, told Lloyd he thought it was too late to cancel, but that he put the order in to cancel; that Mr. Lloyd left the exchange, but he was not out of the office but a minute or a minute and a half when he, Mr. Levy, received the telegram notifying him the order had been executed. He said Mr. Lloyd could not have been out of calling distance at the time. "His order was executed before the cancellation got there. That order was back from New Orleans and in the Waco office before the cancellation got there." Without undertaking to set out the evidence in full to sustain the finding of the jury in response to the sixth special issue, we will say it is our opinion the evidence is ample, and we are not at liberty to disturb such finding.

[2] Under his second assignment appellant contends it was error to permit the witness Levy to testify as to who is liable for a loss resulting from breach of contract, because same was a conclusion of the witness, etc. Silvers & Co. were cotton brokers, engaged in taking orders from customers to buy or sell cotton on the New Orleans exchange. The witness Levy testified that, under the rules adopted by the cotton exchanges, when Silvers & Co. received an order from a customer and executed same through their broker at New Orleans, if there was a loss the New Orleans broker would look to Silvers & Co. for such loss. The witness Levy was familiar with the rules governing the buying and selling of cotton exchanges, and it was proper to permit him to testify who, under such rules, was required to bear a loss from a breach of such contracts, and so to explain why Silvers & Co. required a deposit of their customers. This witness testified as an expert, not who was liable under the law, but who under the rules of such cotton exchanges was required to bear such loss. This was a matter the court and jury could in no other way have known anything about. There was no error in admitting this evidence, but if it was error, it was harmless error.

[3-5] Under appellant's third assignment

complaint is made of the evidence of Lester Levy to the effect that a few minutes after appellant gave his order to sell 100 bales the New York market advanced ten points, and that such advance indicated that the New Orleans market would follow such advance, which indicated a loss to appellant. That the New Orleans cotton market follows the New York market as a general rule is a proper matter for expert evidence, and the witness Levy had qualified as such expert. It is also true that such action as to the two markets is a matter of common knowledge. This evidence was not objectionable as basing a conclusion upon a conclusion, for if the New Orleans market advanced, it required only a very simple calculation to ascertain a loss to appellant. But, if the admission of this evidence was erroneous, it was harmless error, in that the only issue involved in this case was whether or not the cancellation was put in in time to reach the New Orleans exchange before the execution of appellant's order.

We have carefully examined all of appellant's assignments, and, finding no reversible error, affirm the judgment of the trial court.